

**Signed and Filed: May 5, 2026**

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bankruptcy Case No. 24-30431-DM |
| | ) |
| BLYTH ANDREA BUTLER-LOPEZ, | ) Chapter 7 |
| | ) |
| | ) |
| Debtor. | ) |
| | ) |
| | ) |
| PATRYCJA SAYARAD, | ) Adversary Proceeding |
| | ) No. 24-03033-DM |
| Plaintiff, | ) |
| | ) <u>Hearing Held</u> |
| v. | ) Date: April 20, 2026 |
| | ) Time: 10:00 a.m. |
| BLYTH ANDREA BUTLER-LOPEZ, | ) Place: Courtroom 17, 16th Floor |
| | )        450 Golden Gate Ave |
| Defendant. | )        San Francisco, CA |
| | ) |

**MEMORANDUM DECISION DETERMINING NONDISCHARGEABILITY OF LIABILITY**

**I.   <u>INTRODUCTION</u>**

The court held a hearing on a Motion for Default Judgment at the above-captioned date and time on Plaintiff Patrycja Sayarad's ("Sayarad") Complaint to Determine Nondischargeability of Debt under Section 523(a)(6).[1]  At the conclusion of the

---

[1] All Section and Rule references refer to the Bankruptcy Code, 11 U.S.C. §§ 101 et. seq. and the Federal Rules of Bankruptcy Procedure

-1-

hearing, the court took the matter under submission.  For the reasons stated below, the court HEREBY GRANTS default judgment in favor of Sayarad and determines that Defendant Blyth Andrea Butler-Lopez's ("Butler-Lopez") liability to Sayarad in the amount of $155,478.32 is excepted from the discharge pursuant to Section 523(a)(6).

**II.    BACKGROUND[2]**

Sayarad and Butler-Lopez became Facebook friends without meeting or knowing each other offline sometime in July 2019. Once in November 2019 and once in December 2019, the parties met in person with their respective children in tow.  The parties maintained an online Facebook friendship until January 2021. Sometime in 2020, Butler-Lopez began reaching out to mutual Facebook connections and falsely accusing Sayarad of multiple crimes, including child abuse, prostitution, property theft, and identity theft.  This activity continued through at least 2023.

Between October 2021 and July 2023, Butler-Lopez filed seven (7) police reports with the San Francisco Police Department accusing Sayarad of stalking, theft, identity theft, and harassment.[3]  It does not appear to the court that the police acted on any of those reports.

Due to the acts undertaken by Butler-Lopez described in this section and the acts giving rise to her nondischarbeability described in the Discussion Section, on July 23, 2022, Sayarad

---

[2] This Memorandum Decision constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052(a).

[3] Butler-Lopez filed three more police reports post-bankruptcy filing accusing Sayarad of the same acts described above.

-2-

filed a complaint for defamation, harassment, and conspiracy in the California Superior Court against Butler-Lopez and four other defendants. That lawsuit was stayed as to Butler-Lopez on June 7, 2024, when she filed bankruptcy. Sayarad later settled with one other defendant for $140,000.

This adversary proceeding was initiated on September 6, 2024 via the Complaint (Dkt. 1). The record reflects a long history of Butler-Lopez stonewalling discovery requests and destroying evidence. The court ultimately sanctioned Butler-Lopez by striking her Answer from the record and converting a scheduled trial to a prove-up hearing on a Motion for Default Judgment (Dkt. 250).

This Memorandum Decision focuses only on those acts that the court has found to be proven by a preponderance of the evidence, and further finds that Butler-Lopez, by those acts willfully and maliciously caused injury to Sayarad which is nondischargeable under Section 523(a)(6).

III. **APPLICABLE LAW**

Generally, motions for default judgment are evaluated on a number of factors, including "(1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *In re McGee*, 359 B.R. 764, 771 (9th Cir. BAP 2006). Because this is a prove-up hearing and this adversary proceeding

-3-

was heavily litigated prior to the striking of the Butler-Lopez's Answer, the majority of these factors weigh in favor of Sayarad.

California law defines written defamation, otherwise known as, libel as "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45. "The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *Wong v. Jing*, 189 Cal.App.4th 1354, 117 Cal. Rptr. 3d 747, 761 (2010).

Publication "does not require dissemination to a substantial number of individuals; it suffices that the defamatory matter is communicated to a single individual other than the one defamed." *Lundquist v. Reusser*, 7 Cal.4th 1193, 31 Cal.Rptr.2d 776, 875 P.2d 1279, 1284 (1994).

In order for liability for any injury, including an injury caused by defamatory statements, to be excepted from discharge pursuant to Section 523(a)(6), a defendant must have acted willfully and maliciously in causing the injury. An injurious act is willful "when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct." *In re Su*, 290 F.3d 1140, 1142 (9th Cir. 2002). *See also Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974 (1998). "A 'malicious' injury involves (1) a wrongful act, (2) done intentionally, (3)

-4-

which necessarily causes injury, and (4) is done without just cause or excuse.'" *In re Su*, 290 F.3d at 1146-47 (*quoting In re Jercich*, 238 F.3d 1202, 1209 (9th Cir. 2001).

## IV.   DISCUSSION

### A. Butler-Lopez Willfully, Maliciously, and Repeatedly Defamed Sayarad

Sayarad has demonstrated by a preponderance of the evidence that in March 2022 Butler-Lopez published to a broad audience on Facebook, including Sayarad's friends and real estate clients, false statements that Sayarad stalked Butler-Lopez; impersonated Butler-Lopez to speak to men; and engaged in online affairs with men.  This publication caused at least one real estate client to stop working with her. The publication also had a tendency to injure Sayarad's occupation as a real estate agent, which depends on appearing stable, professional, and reliable.  These comments were made in concert with other posts from related contacts that all disparaged Sayarad.  The court determines that Butler-Lopez made these false statements with the subjective motive to injure Sayarad.  The court further determines that these statements were wrongful, intentionally made, caused injury to Sayarad, and were made without just cause or excuse.

Through the testimony of witness Heather Chavez, and through exhibits of multiple police reports filed by Butler-Lopez, and state court transcripts,[4] Sayarad has demonstrated

---

[4] On October 13, 2022, Butler-Lopez sought a Civil Harassment Restraining Order against Sayarad.  Butler-Lopez submitted as evidence what she claimed was a voicemail from Sayarad, which was replete with racial epithets, cursing, and an affirmation that Sayarad sexually abused her son.  The state court judge

-5-

that Butler-Lopez published to Ms. Chavez and others false statements about Sayarad, including that Sayarad sexually and physically abused her son; abused her role as a real estate agent to steal Butler-Lopez' personal information; and stole Butler-Lopez' credit cards. These statements are extreme accusations of multiple crimes, and exposed Sayarad to hatred and obloquy. The court determines that Butler-Lopez made these false statements with the subjective motive to injure Sayarad. The court further determines that these statements were wrongful, intentionally made, caused injury to Sayarad, and were made without just cause or excuse.

Through Sayarad's relevant exhibits, and the testimony of Sayarad and Heather Chavez, the court determines in June 2022, Butler-Lopez, via a pseudonymous profile, left the Yelp review described above depicting falsified Twitter posts that appeared to be Sayarad making racist comments and threats against public figures. This publication prompted swift action from her employer that did not result in her firing but did damage her reputation.

The court determines that Butler-Lopez published the Yelp review with the subjective motive to injure Sayarad via firing or other professional harm. The court further determines that

found the voicemail to have been fabricated and warned Butler-Lopez that there would be future legal consequences for presenting false evidence. The judge ultimately denied the request for a restraining order and ordered that Butler-Lopez pay Sayarad's attorney's fees. Sayarad does not seek to except those fees from discharge, but the underlying facts that Butler-Lopez previously fabricated outrageous evidence against Sayarad in order to accuse her of the acts Sayarad describes in this matter is relevant to the court's determination.

-6-

the publication was wrongful, intentionally made, caused injury to Sayarad, and was done without just cause or excuse.

Sayarad has shown that in March 2022, shortly after publishing the defamatory statements discussed above, Butler-Lopez published Sayarad's public real estate agent profile listed on the United Brokers Real Estate website, which included Sayarad's phone number. Shortly after this publication, Sayarad began receiving harassing and threatening calls and messages, which did not cease until she changed her phone number in November 2023. This publication, along with the Yelp review described above, prompted Sayarad to remove her profile and phone number from her employer's website and promotional materials. Sayarad suffered mentally and emotionally from the many phone calls and messages. Because she has removed herself from her brokerage's website and promotional materials, she has been unable to cultivate new clients.

B. **Damages**

Actual Damages: As a result of the defamatory statements and harassment caused by Butler-Lopez, Sayarad incurred expenses to remove her contact information from business fliers and signage for open houses, as well as medical expenses following a panic attack due to the stress of the harassment. These expenses combined total $5,478.32.

General Damages: In addition to the actual damages incurred, Sayarad seeks general presumed damages for reputational harm and emotional distress for the shame, mortification, and hurt feelings caused by Butler-Lopez's campaign of defamation and harassment. While Sayarad could have

-7-

Case: 24-03033   Doc# 266   Filed: 05/05/26   Entered: 05/05/26 15:44:59   Page 7 of 10

provided guidance regarding lost income due to her inability to find new clients online, she did not.  There are no examples of what Sayarad's income was prior to the Butler-Lopez's defamation and harassment campaign, and nothing demonstrating the extent to which that income has been reduced after.  All the court has is (1) former broker of record Dallas Hom's estimate that Sayarad's sales have reduced by 50% since she has removed her information from the United Brokers Real Estate website and other promotional materials, and (2) and the statement of current broker of record Ms. Wong that Sayarad still is a "top performer".  With no guidance for the court, it determines that Sayarad's damages for pain, distress, and lost income amount to $150,000.

Punitive Damages: Sayarad has asked the court to award her punitive damages of $2.5 million dollars.  She has not articulated a cogent reason for her request and apparently overlooks one of the guiding principles of punitive damage awards, namely the ability of a defendant to respond to such an award.  *Kaffaga v. Estate of Steinbeck*, 938 F.3d 1006, 1018 ("It is the plaintiff's burden to place into the record "meaningful evidence of the defendant's financial condition" to support a defendant's ability to pay" an award of punitive damages.) (internal quotation omitted).  It is well-established that Butler-Lopez has just gone through Chapter 7 bankruptcy.  Although she has obtained a discharge of many of her debts, this court has already imposed a new post-petition liability of

Case: 24-03033   Doc# 266   Filed: 05/05/26   Entered: 05/05/26 15:44:59   Page 8 of 10

nearly $189,218,62[5] and by this decision, adds another $155,478. There is no reason to believe she will be able to respond even to that amount, let alone an additional amount as requested.

Another well-established principle at work here is that punitive damages are to punish and deter repetition. *Boyle v. Lorimar Productions, Inc.*, 13 F.3d 1357, 1360 (Ninth Cir. 1994) (Punitive damages should "not exceed an amount necessary to accomplish society's goals of punishment and deterrence.") (internal quotation omitted). If the court thought any additional monetary liability might deter Butler-Lopez, it might be persuaded. That is not the case. Butler-Lopez needs help and rehabilitation, but this court is in no position to provide it.

For these reasons, the court declines to award any punitive damages.

## V. <u>CONCLUSION</u>

Accordingly, the court will enter a concurrent judgment stating that the nondischargeable liability owed to Sayarad by Butler-Lopez is **$155,478.32.**

**END OF MEMORANDUM DECISION**

---

[5] The court levied a $1,000 sanction for violation of Rule 9011 (Dkt. 223); awarded attorney's fees to Sayarad's counsel in the amount of $157,441.45 for the successful request for sanctions for discovery violations (Dkt. 259); and awarded attorney's fees to Sayarad's counsel in the amount of $30,777.17 for the successful request for Rule 9011 sanctions (Dkt. 260).

-9-

COURT SERVICE LIST

Blyth Andrea Butler-Lopez
PO Box 320113
San Francisco, CA 94132
bblopez805@gmail.com

-10-